**FREDERICK HART & CO., Inc., v. RECORDGRAPH CORPORATION.**

Civil Action No. 999.

District Court, D. Delaware.

April 18, 1947.

Thomas Cooch (Marvel & Morford), of Wilmington, Del., Willis H. Taylor, Jr., John T. Farley, and Harold A. Traver (Pennie, Davis, Marvin & Edmonds), all of New York City, for plaintiff.

Robert H. Richards, Jr. (Richards, Layton & Finger), of Wilmington, Del., and George T. Bean and Robert M. Anstett (Kenyon & Kenyon), both of New York City, for defendant.

RODNEY, District Judge.

This matter concerns a somewhat confusing set of interrelated motions concerning the litigation in this court and elsewhere. A statement of the underlying facts will be limited to those giving a reasonable understanding of the present controversy.

The defendant, Recordgraph, was organized in 1939 and became the owner of some fifteen United States Letters Patent. By agreement dated May 24, 1943, it entered into an exclusive license agreement concerning those patents with Amertype Recordgraph Corporation, which subsequently merged with the plaintiff. Under this agreement the plaintiff continued to operate the business until 1946. A few provisions of the agreement may be briefly mentioned. It provided for royalties to the defendant; it provided that any controversy arising out of the agreement should be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association; it provided that the agreement should be governed by the laws of the State of New Jersey; it provided that the licensee could patent in its own name any improvements on the patents of the defendant and that upon the termination of the agreement these additional patents would be transferred to the defendant, Recordgraph Corporation; it provided that the licensee (the present plaintiff) could terminate the agreement on 90 days' notice.

The plaintiff on September 17, 1946, notified the defendant that the agreement would be terminated 90 days after such date, and it was terminated pursuant to such notice.

On December 18, 1946, the present plaintiff filed its complaint against the present defendant in the United States District Court for the District of New Jersey. The complaint alleged a controversy as to fifteen United States Letters Patent and prayed for a declaratory judgment that said patents and each of them were not infringed and were invalid and void. After motion to quash the service and dismiss the complaint on the ground of lack of jurisdiction of the New Jersey Court, the action was dismissed by the plaintiff on January 20, 1947.

On January 18, 1947, the plaintiff filed in this court its complaint which is stated to be identical with the complaint filed in the New Jersey Court. Thereafter the present series of motions have been made and some degree of orderly course may be charted by their chronological statement:

Jan. 18, 1947. Complaint filed in this court for declaratory judgment alleging invalidity of fifteen patents.

Jan. 20, 1947. Recordgraph filed complaint in United States District Court in New York alleging infringement by Hart of four patents involved in Delaware action.

Jan. 27, 1947. Hart moved for order restraining Recordgraph from further prosecution of New York action.

Jan. 31, 1947. Recordgraph invoked arbitration proceedings in New York allegedly pursuant to terms of contract.

Feb. 3, 1947. Recordgraph, before answer, served Hart with interrogatories requesting information as to foundation of the "controversy" as basis of jurisdiction. No prior order of court for filing or serving interrogatories was obtained.

Feb. 7, 1947. Hart filed an amendment to its complaint, before answer, so as to include the license agreement between parties and alleging controversy as to terms of that agreement.

Feb. 7, 1947. Hart moved for order restraining Recordgraph from proceeding in New York with the arbitration proceedings.

Feb. 8, 1947. Hart filed objections to interrogatories of defendant.

Feb. 8, 1947. Stipulation delaying time to answer until after disposition of motions to stay New York proceedings.

Feb. 18, 1947. Recordgraph moved nunc pro tunc for leave to file interrogatories filed and noticed to Hart on Feb. 3, 1947.

Feb. 24, 1947. Recordgraph moved to strike Hart's amendment of complaint filed Feb. 2, 1947.

Normally and chronologically the first question to be considered would be the motion of the plaintiff for an order restraining the prosecution of the New York proceeding instituted by the defendant by reason of the prior institution of the present action in this district. The consideration of that question, however, must depend upon the ascertainment and establishment of a valid jurisdiction in this court as to the existence of an actual controversy between the parties. The complaint makes

the allegation of the existence of a controversy but, beyond the assertion of a charge of infringement, alleges no fact and makes no profert or exhibit from which the existence of a controversy could be ascertained. The defendant, before answer, has served upon the plaintiff interrogatories directed to the existence of such controversy. These interrogatories were filed without the precedent order of the court and the plaintiff has filed objections to such interrogatories. In connection therewith the defendant has filed a motion that leave nunc pro tunc be given to file the interrogatories noticed to the plaintiff on February 3, 1947.

█ Logically then the determination of the matters growing out of the interrogatories would claim first attention, except for one consideration.

The plaintiff has filed an amendment to the complaint under Rule 15(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, so as to include 'the license agreement between the parties, or profert of it, and alleges a controversy between the parties as to the terms of that agreement. The defendant, under Rule 12(f), has moved to strike the amendatory paragraphs and prayers and the question becomes crucial whether the matter of the interrogatories or of the amendment to the complaint should claim first consideration.

Between the parties there is no diversity of citizenship. This court then has no jurisdiction on the ground of such diversity. The sole ground of jurisdiction in the original complaint is that it was founded on the patent laws. The controversy alleged in the amendment is clearly non-federal in character and grows out of the contractual obligations arising under the agreement of May 24, 1943.

The plaintiff strongly relies upon Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. That case did consider a situation where both a federal and a non-federal question was involved. It held where two grounds constituted the single cause of action and one ground was federal in nature and the other non-federal, and the federal ground was rejected upon its merits, that the court would retain jurisdiction for the determination of the non-federal ground.

Certain questions concerning the contractual relations, such as the non-payment of royalties, seem clearly non-federal in nature. But the plaintiff argues that the provision, insisted on by the defendant, that the plaintiff should assign any improvement patents developed by the plaintiff relates to the same cause of action stated in the original complaint. Concededly the actual obligation to assign improvement patents arises from the agreement and is contractual and non-federal, but the plaintiff insists that an obligation to assign improvement patents is closely interwoven with the complaint alleging invalidity of the original patents for, it says, there can be no improvement patents upon invalid or non-existent inventions.

Hurn v. Oursler may have close application to this case but, if so, its application would arise at a conceivable later stage. In my opinion it can have no application at the present stage. In Hurn v. Oursler the jurisdiction of the court was complete by reason of the existence of the federal question and being complete the question was as to retention of that complete jurisdiction for the disposition of a non-federal question.

In this case the interposition of interrogatories to determine the existence of an actual controversy is directed to the jurisdiction of the court over the federal question and this jurisdiction cannot be established by the introduction of an amendment to the complaint presenting a non-federal question over which, of and by itself, the court could have no jurisdiction whatever. If the amendment can be allowed at all it would, under Hurn v. Oursler [289 U.S. 238, 53 S.Ct. 589], be after the establishment of jurisdiction of the court showing a federal question "not plainly wanting in substance" and would not be allowed before such determination or, indeed, allowed for the purpose of establishing such jurisdiction.

█ From this viewpoint then the first question to be determined is whether or not the defendant may file interrogatories

directed to the question as to whether or not an actual controversy exists under the patent laws as contended in the complaint. With this, and preliminarily thereto, there should be considered the complementary question as to the motion nunc pro tunc for leave to serve the interrogatories. This order for nunc pro tunc leave to serve the interrogatories will be granted. No language of Rule 33 of the Rules of Civil Procedure as it now exists prohibits the service of interrogatories before answer. It is true that certain cases[1] have held that interrogatories should not be served until answer filed and issue joined. The reason assigned in each case is that until issue be joined it cannot be ascertained that the interrogatories would have relevancy to the issue and so was established the rule that interrogatories filed before answer must receive the precedent order of the court.

That rule may have been proper in those cases. Here such rule does not exist. The present interrogatories would seem to be directed solely to the ascertainment of the jurisdictional feature of the existence of an actual controversy between the parties and thus their relevancy would seem to exist.

■ The service of the interrogatories before answer is expressly covered by the new amendment to Rule 33 approved by the United States Supreme Court and now submitted to Congress. Under that new rule the consent of the court would not be necessary because the interrogatories were not served until more than ten days after the commencement of the action. If judicial discretion be involved such discretion is hereby exercised.

■ And now as to the interrogatories themselves. The complaint, as heretofore stated, makes the allegation of the existence of an actual controversy. No fact is alleged and no letter or document shown or proffered from which the controversy can be determined. A mere statement of the existence of a controversy is a legal conclusion.[2]

■ Objection is made to the interrogatories on the ground that the information should have been sought under Rule 12(e) for a Bill of Particulars. In Bakelite Corporation et al. v. Lubri-Zol Development Corporation, D.C., 36 F.Supp. 105, defendant sought by a Bill of Particulars to obtain from plaintiffs the date, name of addressee and sender of the written notice of infringement sent to plaintiffs and their customers. A Bill of Particulars was held in this court as improper for such purpose.

The interrogatories are directed to the ascertainment of jurisdiction. Every court is desirous of confining its action within the limits of its own clear jurisdiction. This is especially true, as here, when we are asked to restrain the prosecution of an action in another court and arbitration proceedings taken in another state on the ground that such suit and proceedings were brought after this court obtained jurisdiction and such suit and proceedings related to the same subject matter as here involved. Every rule of comity requires that before a court restrains proceedings in another court because of its own prior jurisdiction it should be reasonably certain that it does possess that jurisdiction which it impliedly denies to another. This is true where the question of jurisdiction is presented by a party even though jurisdiction be not formally denied.

An order will be entered requiring the plaintiff to answer the interrogatories heretofore served within fifteen days from the date of such order or within ten days of the date of such order to make written objection thereto. Such order will also require the defendant, within fifteen days after receiving the answers to the interrogatories from the plaintiff, to answer the complaint or take such other step calculated to determine the jurisdiction of this court.

[1] Stewart-Warner Corporation v. Staley, D.C., 2 F.R.D. 199, Sheldon v. Great Lakes Transit Corporation, D.C., 2 F.R.D. 272, Musher Foundation, Inc., v. Alba Trading Co., Inc., D.C., 42 F.Supp. 281, Standard Accident Insurance Co. of Detroit v. Home Indemnity Co., D.C., 6 F.R.D. 218.

[2] General Electric Co. v. Refrigeration Patents Corporation, D.C., 65 F.Supp. 75, 79; Ohio Casualty Ins. Co. v. Marr, et al., 10 Cir., 98 F.2d 973, 976.

All other motions now pending, including the motion to restrain the prosecution in the New York Court, the motion to restrain the prosecution of the arbitration proceedings and the motion to dismiss the amendment to the complaint here filed will be held in abeyance to await the determination of jurisdiction.