**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-2129

CHAPIN FURNITURE OUTLET INCORPORATED,

Plaintiff - Appellant,

versus

TOWN OF CHAPIN, SOUTH CAROLINA, a
municipality; STANLEY SHEALY, Mayor of Town of
Chapin; ADRIENNE THOMPSON, Zoning
Administrator of Town of Chapin,

Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Columbia. Margaret B. Seymour, District Judge.
(3:05-cv-01398-MBS)

Argued: September 28, 2007          Decided: October 30, 2007

Before WILKINSON and KING, Circuit Judges, and Frederick P. STAMP,
Jr., Senior United States District Judge for the Northern District
of West Virginia, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Douglas M. Bragg, WINSTON & BRAGG, Wilsonville, Oregon, for
Appellant. Michael Stephen Pauley, VINTON D. LIDE & ASSOCIATES,
Lexington, South Carolina, for Appellees. **ON BRIEF:** D. Reece
Williams, III, CALLISON, TIGHE & ROBINSON, Columbia, South
Carolina, for Appellant. Vinton D. Lide, VINTON D. LIDE &
ASSOCIATES, Lexington, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Chapin Furniture Outlet Incorporated appeals from the district court's award of summary judgment to the Town of Chapin and two of its officials (collectively, the "Town") in this § 1983 proceeding. See Chapin Furniture Outlet, Inc. v. Town of Chapin, No. 3:05-1398-MBS (D.S.C. Sept. 20, 2006) (the "Opinion").[1]  In May 2005, Chapin Furniture initiated this action in the District of South Carolina — seeking declaratory and injunctive relief, as well as nominal and consequential damages — challenging the Town's attempt to apply a zoning ordinance against Chapin's use of an electronic sign outside its place of business.  Chapin contends that the court erred in ruling that the ordinance was content-neutral and did not contravene the First Amendment.  Because the Town has revised the challenged ordinance to meet Chapin's contentions and will not reenact it, Chapin's claims are moot.  As explained below, we vacate and remand for dismissal.

I.

A.

Chapin Furniture, which operates a furniture store in the small town of Chapin, South Carolina, erected an electronic sign, called an electronic message center (the "EMC"), outside its store

---

[1]The district court's Opinion is found at J.A. 614-24. (Citations herein to "J.A. ____" refer to the Joint Appendix filed by the parties in this appeal.)

in August 2004. The EMC is designed to flash or scroll messages across its display screen. Chapin installed the EMC at the top of a sign post it shared with other businesses, located on Chapin Road between the Town's only two traffic lights. The EMC is the largest and tallest sign on the block and the only one of its type in the Town.

When Chapin added the EMC to the sign post, the Town's zoning ordinance (the "Ordinance") prohibited, inter alia, the installation of:

> Flashing signs, signs with flashing or reflective disks, signs with flashing lights or lights of changing degree of intensity or color or signs with electrically scrolled messages (except government signs and signs which give time and temperature information). If a time and temperature sign alternates between a time message and a temperature message it shall continuously show one message a minimum of three (3) seconds in time before switching to the other message.

Town of Chapin Zoning Ordinance § 901(G). The Ordinance required those wishing to replace or construct signs to first obtain a permit, but failed to specify a time within which the Town had to act on a permit application. Id. at § 900.2. Although the Town contends that the purpose of the restrictions spelled out in the Ordinance was to protect the rural aesthetics of the Town and, as a safety measure, to reduce distractions to drivers, the safety purpose was not specified in connection with the sign restrictions.

On August 20, 2004, the Town's Zoning Administrator informed Chapin that its EMC was operating in a manner that violated the

3

Ordinance.  On September 21, 2004, the Administrator sent a letter to Chapin advising that its new sign was not in compliance with the Ordinance and that the EMC manufacturer had "misrepresented the nature of the sign when applying for a permit."  J.A. 150.[2]  The Administrator concluded, after conferring with the Planning Commission, the Town Council, the Mayor, and others, that the "sign is unacceptable to everyone and an exception will not be made to allow it to remain."  Id.  Accordingly, the Administrator asked Chapin to "[p]lease respect our ordinances and remove the sign."  Id.  Chapin failed to comply with her request to remove the sign.

Nearly six months later, on March 7, 2005, the Town's Mayor sent Chapin a second letter, again requesting that the sign be removed.  The Mayor asserted that the sign violated the Ordinance because it did not "provide name and nature of store only . . . . [and] the sign must not flash, change degree of intensity or electrically scroll."  J.A. 398.  Concluding that the sign "violates all of the above," the Mayor requested that Chapin "not delay this matter any further" and indicated that it had "until

---

[2]Chapin's permit may have been obtained by misrepresentations made by the EMC's manufacturer about the nature of changes to the sign.  The Zoning Administrator contends that she was informed by telephone that Chapin was simply going to add illumination to the sign it already displayed.  Because the Ordinance does not require a permit for changes to an existing lawful sign that do not render the sign in violation of the Ordinance, the Administrator determined that Chapin did not need a permit for the changes proposed.  When the manufacturer indicated that he would like a permit anyway, the permit fee was waived and Chapin secured the permit that very day.

4

March 31, 2005 to have [its] sign removed." Id. Chapin also failed to comply with this request, but the Town took no action to enforce the Ordinance — it never cited, fined, or charged Chapin with violating the Ordinance, and never instituted any court proceedings or otherwise forced the EMC into disuse. Chapin has thus continued to use the EMC, but has modified the rate at which messages are flashed and stopped scrolling messages across the display screen.

## B.

On May 12, 2005, Chapin filed a ten-count § 1983 complaint in the District of South Carolina, asserting that the Ordinance violated its rights under the First, Fifth, and Fourteenth Amendments. The complaint requested declaratory and injunctive relief, plus nominal and consequential damages. The crux of Chapin's position is the allegation that "[b]y enacting and enforcing the regulation of [EMCs], the Town of Chapin is willfully and unlawfully depriving [it], and other citizens and businesses in Chapin, of their right of free expression through this form of communication, as guaranteed by the First and Fourteenth Amendments." J.A. 13. Chapin contends that the First Amendment is contravened because: (1) the Ordinance, in allowing the government to utilize EMCs, and allowing the display of time and temperature information only, impermissibly regulates speech based on content and viewpoint; (2) the Town's stated purpose of protecting rural

5

aesthetics fails to show an interest sufficient to permit it to regulate speech in this manner; and (3) the entirety of the Ordinance is an unconstitutional prior restraint, because its permit scheme fails to provide a defined time period for the Town to make permit decisions.

In February 2006, the Town filed a motion for summary judgment and Chapin filed a cross-motion for partial summary judgment. On June 22, 2006, at a hearing on the summary judgment motions, the Town informed the district court that it was in the process of revising the Ordinance. As a result, the court obtained supplemental briefing on the mootness issue, which implicated its jurisdiction to address the issues raised by Chapin.

On September 20, 2006, the district court issued the Opinion from which this appeal is taken, awarding summary judgment to the Town, denying Chapin's request for partial summary judgment, and concluding that Chapin's claims were not moot. On the mootness issue, the court explained that the Town had failed to meet its "burden of demonstrating that [it] would not reenact the challenged provisions of the Ordinance." Opinion 4.[3] On the merits, the court concluded that the Ordinance was a content-neutral regulation of speech that advanced legitimate governmental interests in

---

[3]The Opinion indicates that "[t]he Town approved the revised ordinance on July 18, 2006," and the district court treated the Revised Ordinance as final. Opinion 2. The Revised Ordinance, however, was not actually enacted until November 7, 2006, after the Town had conducted a public hearing.

preserving rural community aesthetics and avoiding traffic hazards. Id. at 5-6. It also determined that the Ordinance did not unconstitutionally restrict commercial speech or constitute a prior restraint thereon. Id. at 8-9. For these reasons, the court concluded that the "Ordinance passe[d] constitutional muster." Id. at 11. On October 18, 2006, Chapin filed its notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

C.

On November 7, 2006, after the district court had awarded summary judgment to the Town and Chapin had initiated this appeal, the Town validly enacted its revised Ordinance (the "Revised Ordinance"). The Revised Ordinance includes a Statement of Purpose and Intent, i.e., that the "intent of these sign regulations" is to preserve, inter alia, "the health, safety, welfare and general well-being of the community's citizens." See Appellee's Br., Addendum A, § 900.1. The Revised Ordinance now prohibits:

> Flashing signs, signs with flashing or reflective disks, signs with flashing lights or lights of changing degree of intensity or color or signs with electrically scrolled messages.

Id. at § 901(G). The Revised Ordinance does not contain an exception for governmental signs or for signs displaying only time and temperature information. In addition, it provides that, upon receipt of all necessary information, permit requests will be acted upon by the Town within two weeks of receipt. Id. at § 900.2. Although Chapin fails to assert on appeal any First Amendment

7

concerns regarding the Revised Ordinance, it maintains that the revisions were adopted in an effort to render its claims moot and that the Ordinance could be reenacted at any time.[4]

## II.

We review de novo a district court's award of summary judgment, viewing the facts in the light most favorable to the non-moving party. See Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004). We also review de novo a district court's ruling concerning subject matter jurisdiction, including a ruling on mootness. See Covenant Media of S.C., LLC v. City of N. Charleston, 493 F.3d 421, 428 (4th Cir. 2007) (concluding that district court's conclusion regarding Article III jurisdiction is "legal conclusion that we review de novo").

---

[4]The Revised Ordinance does not permit scrolling messages and Chapin mentions this point (briefly) only in its reply brief. Chapin's summary briefing on this issue provides an insufficient basis for our review. See Fed. R. App. P. 28(a)(9)(A) (providing that appellant's brief must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Assuming that Chapin preserved this issue, its discontent with such a de minimus aspect of the Revised Ordinance is not sufficient to preserve a live case or controversy. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999) (concluding that "federal jurisdiction requires that a party assert a substantial federal claim" (emphasis in original, internal quotation marks omitted)); Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (concluding that mere assertion of constitutional violation not sufficient to obtain jurisdiction because jurisdiction requires party to assert substantial federal claim).

III.

Before assessing the merits of Chapin's appellate contentions, we must first determine whether its claims have been rendered moot by the Town's adoption of the Revised Ordinance. This process is necessary because the Constitution limits our jurisdiction to the adjudication of actual cases and controversies. See U.S. Const. art. III, § 2; DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (per curiam). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). The requirement that a case involve an actual, ongoing controversy extends throughout the pendency of an action. See Preiser v. Newkirk, 422 U.S. 395, 401 (1975). To satisfy the Article III case or controversy requirement, "[a] litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70-71 (1983). When a case or controversy ceases to exist, the litigation becomes moot and the federal court no longer possesses jurisdiction to proceed. Id.

A.

As a preliminary matter, Chapin maintains that we cannot dismiss its appeal as moot because the Town has waived any mootness contention in failing to file a cross-appeal, and in raising mootness only in its response brief. This contention is without

9

merit, however, because mootness is a jurisdictional question that we are obliged, if necessary, to address sua sponte. See Friedman's, Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002) (noting that "the question of whether we are presented with a live case or controversy is a question we may raise sua sponte" as mootness goes to heart of Article III jurisdiction (internal quotation marks omitted)); see also Mt. Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (concluding that "we are obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction"). Accordingly, because we lack jurisdiction "to decide questions that cannot affect the rights of litigants in the case before [us]," we must address whether the Town's adoption of the Revised Ordinance has mooted Chapin's case. See North Carolina v. Rice, 404 U.S. 244, 246 (1971).

## B.

## 1.

As spelled out above, Chapin has complained about multiple aspects of the Ordinance. See supra Part I.B. However, the Revised Ordinance undermines each of Chapin's contentions. It makes no exception for the government or for time and temperature EMCs, and its Statement of Purpose and Intent confirms that the "intent of these sign regulations" is to preserve, inter alia, "the health, safety, welfare and general well-being of the community's citizens." See Appellee's Br., Addendum A, § 900.1. Moreover, the

10

Revised Ordinance requires the Town to approve or deny permit applications within two weeks of obtaining the necessary information. Id. at § 900.2. Because the challenged aspects of the Ordinance have been remedied, Chapin's claims for injunctive and declaratory relief appear to be moot. See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000) (noting that "superseding statute or regulation moots a case . . . to the extent that it removes challenged features of the prior law"). Our review of the mootness issue does not end here, however, because voluntary cessation of a challenged activity does not automatically deprive us of jurisdiction.

2.

As we recognized in Am. Legion Post 7 of Durham v. City of Durham, "the mere amendment or repeal of a challenged ordinance does not automatically moot a challenge to that ordinance." 239 F.3d 601, 605 (4th Cir. 2001) (citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). Instead, we must assess the likelihood that the Town will reenact the Ordinance. Id. at 606. This is so because "[a] case is not moot, and the exercise of federal jurisdiction may be appropriate . . . if a party can demonstrate that the apparent absence of a live dispute is merely a temporary abeyance of a harm that is 'capable of repetition, yet evading review.'" Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir

11

2006) (citing <u>Mellen v. Bunting</u>, 327 F.3d 355, 363-64 (4th Cir. 2003)). Nevertheless, a lawsuit challenging a statute that no longer exists can become moot "even where re-enactment of the statute at issue is within the power of the legislature." <u>Am. Legion Post 7</u>, 239 F.3d at 606. "Only if reenactment is not merely possible but appears probable may we find the harm to be 'capable of repetition, yet evading review' and hold that the case is not moot." <u>Brooks</u>, 462 F.3d at 348.

In its evaluation of the mootness issue, the district court concluded that the Town had failed to meet its "burden of demonstrating that [it] would not reenact the challenged provisions of the Ordinance." Opinion 4. Two important events have occurred since the court's Opinion of September 20, 2006. First, on November 7, 2006, the Town enacted the Revised Ordinance, despite having already been awarded summary judgment in this case. Second, the Town assured this Court at oral argument that it will not reenact the Ordinance. Accordingly, we are confident that the Ordinance will not be reenacted and that any alleged harm to Chapin is not "capable of repetition, yet evading review." See <u>Reyes v. City of Lynchburg</u>, 300 F.3d 449, 453 (4th Cir. 2002) (concluding overbreadth claim moot where city repealed challenged ordinance, promised not to reenact similar one, and there was "no reasonable expectation" that city would reenact it). The claims made in Chapin's complaint are therefore now moot. <u>Id.</u> at 453 (agreeing

12

with lower court that case was "moot as to future application" because City repealed ordinance and promised not to reenact similar one).

C.

Chapin contends, however, that even if its claims for declaratory and injunctive relief have been mooted by the Revised Ordinance, its claim for nominal damages yet presents a live controversy.[5] Chapin posits that "for so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." Buckhannon Bd. & Care Home, Inc v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 608-09 (2001). This proposition is normally valid, and it has been applied where a plaintiff is only pursuing a claim for nominal damages. See Henson v. Honor Comm. of the Univ. of Va., 719 F.2d 69, 72 n.5 (4th Cir. 1983) (observing that withdrawal of disciplinary charges did not moot claim because plaintiff also sought nominal damages); see also KH Outdoor, LLC v. Clay County, 482 F.3d 1299, 1303 (11th Cir. 2007) (noting that, because nominal damages were requested, changes made to ordinance did not moot claim).

Chapin's assertion of a nominal damages claim alone is insufficient to preserve a live controversy, however, as the

---

[5]Chapin has not pursued its claim for consequential damages on appeal. See Fed. R. App. P. 28(a)(9)(A); Carter v. Lee, 283 F.3d 240, 252 n.11 (4th Cir. 2002) (noting that contentions not raised in opening brief are deemed waived).

Ordinance was never enforced against it and it has not suffered any constitutional deprivation. See Tanner Adver. Group, LLC v. Fayette County, 451 F.3d 777, 786 (11th Cir. 2006) (concluding that "request for damages that is barred as a matter of law cannot save a case from mootness")(citing Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997)). The Supreme Court's decision in Carey v. Piphus, 435 U.S. 247, 254 (1978), "obligates a court to award nominal damages when a plaintiff establishes the violation of [a constitutional right] but cannot prove actual injury." Farrar v. Hobby, 506 U.S. 103, 112 (1992). As the Supreme Court has observed, "[w]hatever the constitutional basis for § 1983 liability, such damages must always be designed to compensate injuries caused by the [constitutional] deprivation." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 309-10 (1986) (internal quotation marks omitted). Thus, although Chapin need not prove an actual, compensable injury in order to recover nominal damages, it must nevertheless show that a constitutional deprivation occurred. Id. at 308 n.11; see also Reyes, 300 F.3d at 453 ("Nominal damages may be available in a § 1983 case if a plaintiff was deprived of an absolute right yet did not suffer an actual injury."); Williams v. Griffin, 952 F.2d 820, 825 n.2 (4th Cir. 1991) (concluding that "in the absence of a showing of actual injury, [plaintiff] would still be entitled to nominal damages upon proof of a constitutional violation").

14

In the absence of a constitutional deprivation, Chapin's nominal damages claim does not save this case from mootness. Moreover, the fact that Chapin could have suffered some constitutional deprivation if the Town had enforced the Ordinance does not save its claim for nominal damages — such damages are reserved for constitutional deprivations that have occurred, not those that are merely speculative. See Tanner, 451 F.3d at 786-87 (concluding that claims of appellant could not be saved from mootness by claim for damages where sign ordinance had not caused harm); see also Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1526 (10th Cir. 1992) (finding that, although adoption of new policy mooted claims for injunctive relief, "the district court erred in dismissing the nominal damages claim which relates to past (not future) conduct") (emphasis in original).

In Covenant Media of South Carolina, LLC v. City of North Charleston, we recently addressed a mootness issue related to nominal damages in a § 1983 case. See 493 F.3d 421 (4th Cir. 2007). Covenant Media had filed a civil action against the City of North Charleston, alleging a violation of its First Amendment rights by enforcement of the City's sign regulation. Id. at 424. Covenant Media had submitted an application to construct a billboard as required by the City's sign regulation, and when the City failed to act on its application for several months, Covenant Media filed suit. Id. at 425. Covenant Media contended that the

15

sign regulation was unconstitutional because it "failed to require a decision on a sign permit within a specific time period, in contravention of procedural safeguards mandated by Freedman v. Maryland, 380 U.S. 51, 58-59 (1965)." Id. at 428. In addition to injunctive relief, Covenant Media sought nominal damages. Id. at 427. During the litigation, North Charleston adopted a revised regulation, which placed a forty-five day time limitation on the disposition of sign permit applications — a procedural provision not included in its predecessor regulation. Id. at 426. We decided that, if the City's original sign regulation lacked the procedural safeguards mandated by Freedman, Covenant had "suffered an injury by the City's application of an unconstitutional ordinance that is redressable at least by nominal damages." Id. at 428. Accordingly, we determined that "Covenant's suit is not moot because if Covenant is correct on the merits, it is entitled to at least nominal damages." Id. at 429 n.4. We nevertheless cautioned that "a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions." Id. at 430 (emphasis added).

The Covenant Media situation is readily distinguishable from this appeal. Unlike the plaintiff in Covenant Media, Chapin's permit application received prompt attention. In fact, Chapin was not required to submit a permit application before making changes to its sign. Despite assurances that it did not need a permit,

16

Chapin nevertheless submitted an application. In response, the Town immediately waived the permit fee and approved the application. It was only after Chapin installed and began using its EMC, on August 20, 2004, that the Town realized the nature of Chapin's changes to its sign and requested that it remove the EMC.

Notwithstanding Chapin's violation of the Ordinance, the Town did not fine or cite Chapin, and no court proceedings were initiated against it. In fact, in its summary judgment papers, Chapin informed the district court that "[f]rom the time the sign was put up through the course of this litigation, the Chapin Furniture Outlet sign has been in use advertising for the businesses located on the property the sign is on." J.A. 360. Chapin noted that "[t]he sign has been displaying these messages at the same intervals allowed for time and temperature signs." Id. at 360-61. Such flashing messages violated the Ordinance, but Chapin concedes that it has used its EMC throughout the pendency of its dispute with the Town. Any contention that Chapin's speech was chilled by the Ordinance or the Town's letters requesting compliance therewith is thus entirely undermined. And, Chapin has failed to allege any other constitutional deprivation sufficient to support a claim for nominal damages. Unlike the plaintiff in Covenant Media, Chapin is unable to show any constitutional injury caused by the Ordinance. As we observed there, "a plaintiff must establish that he has standing to challenge each provision of an

17

ordinance by showing that he was injured by application of those provisions." Covenant Media, 493 F.3d at 430.

Absent a constitutional deprivation, Chapin's claim for nominal damages fails to present a case or controversy sufficient to avoid mootness. Because we cannot grant "any effectual relief whatever," including nominal damages, in favor of Chapin, this proceeding must be dismissed as moot. Calderon v. Moore, 518 U.S. 149, 150 (1996) (per curiam).

IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for dismissal.[6]

VACATED AND REMANDED

---

[6]When a claim becomes "moot after the entry of a district court's final judgment and prior to the completion of appellate review, we generally vacate the judgment and remand for dismissal." Mellen v. Bunting, 327 F.3d 355, 364 (4th Cir. 2003). Although vacatur is not appropriate where mootness occurs due to the voluntary actions of the losing party, it is available where "appellate review of the adverse ruling was prevented by the vagaries of circumstance or the unilateral action of the party who prevailed below." Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 117-18 (4th Cir. 2000) (internal citations and quotation marks omitted).

18