GREGORY, Circuit Judge,
concurring:
I agree with the majority’s decision to affirm the district court’s dismissal of Stratton’s complaint. I concur with the rationale with one exception — I would find that the due process claim is substantial and not barred by the Rooker-Feldman doctrine, but fails to state a claim upon which relief could be granted. I would thus affirm the dismissal of the due process claim on that ground. See Greenhouse v. MCG Capital Corp., 392 F.3d 650, 660 (4th Cir.2004).
I.
Admittedly, in the complaint, Solomon Stratton claims that he and his family are victims of an international Luciferian child trafficking conspiracy whose reach plausibly extends from the United Nations to child protection authorities in Mecklen-burg County. Beyond these incredulous allegations however, Solomon Stratton asserts that he was deprived due process of law in the initial seizure of the Stratton children and in the termination of the Stratton parents’ rights.
The majority recognizes that “Claim I raises a § 1983 due process challenge to the adequacy of North Carolina’s procedures for removing the Stratton children from their parents’ custody, as well as the state’s procedures for the termination of the Strattons’ parental rights.” Ante, at 290. Yet, it concludes that the due process claim articulated in the complaint is so attenuated that it is insubstantial, and is merely a pretext for having a state-law claim adjudicated in federal court thus barred by the Rooker-Feldman doctrine. I am of a different view.
II.
A.
First, I would find that the due process claim is substantial and thus jurisdiction exists to hear the merits. The substantiality doctrine states that “federal courts are without power to entertain claims otherwise within their jurisdiction if they are ‘so attenuated and insubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion.’ ” Davis v. Pak, 856 F.2d 648, 650-51 (4th Cir.1988) (quoting Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)).
The “msubstantiality threshold is a difficult one to meet,” as “dismissal for insub-stantiality is appropriate only where the proffered claim is truly frivolous,” or is merely a “pretext[ ] for the purpose of having a state law claim adjudicated in the federal system.” Davis, 856 F.2d at 651 (emphasis added). Thus, a dismissal for insubstantiality is “appropriate in only the rarest of circumstances where ... the complaint is deemed totally implausible.” Apple v. Glenn, 183 F.3d 477, 480 (6th Cir.1999); see Ricketts v. Midwest Nat. Bank, 874 F.2d 1177, 1182 (7th Cir.1989) (“insubstantiality dismissals should be ap *293 plied only in extraordinary circumstances”).
If the “complaint raises an arguable question of law which the court may ultimately resolve against the plaintiff,” the more appropriate mechanism for dismissal is Federal Rule of Civil Procedure 12(b)(6). Ricketts, 874 F.2d at 1182 n. 6; see Neitzke v. Williams, 490 U.S. 319, 326 & n. 6, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (holding that Rule 12(b)(1) insubstantiality dismissal is appropriate if based on the judge’s disbelief of a complaint’s factual allegations, whereas, a Rule 12(b)(6) dismissal is appropriate where while operating under the assumption that all or a set of facts in the complaint are true, “without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one,” it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations).
Applying these principles, it seems to me that we could disregard the bizarre conspiracy alleged by Solomon Stratton and consider whether his due process claim fails to state a claim. The due process claim asserted here is not dependent on the Luciferian conspiracy; whether the Strattons were denied due process of law in the initial seizure of the children and in the permanent termination of parental rights is a sufficiently substantial legal question that has not been addressed by any court in the 12 years since this matter arose. Given the liberal construction due to pro se litigants, and our duty to apply the substantiality doctrine only in rare or extraordinary circumstances, the more appropriate approach would be to proceed to analyze whether the claim passes muster under Rule 12(b)(6). Before turning to that question, I first address the separate question whether the Rooker-Feldman doctrine bars the claim.
B.
The majority concludes that to the extent the due process claim is acknowledged, it is “necessarily circumscribed” by Rooker-Feldman. Ante, at 290. I disagree. The Rooker-Feldman doctrine essentially holds that lower federal courts lack authority to “sit in direct review of state court decisions.” Feldman, 460 U.S. at 482 n. 16, 103 S.Ct. 1303 (citation omitted). This doctrine applies specifically to cases where “the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court’s decision itself.” Davani v. Va. Dept. of Transp., 434 F.3d 712, 713 (4th Cir.2006). Thus, in applying the doctrine, (1) there must be a prior state court decision; and (2) the loser in the state court must be challenging or seeking to undo the prior state court’s decision by alleging an injury caused by the state court judgment itself. The doctrine has narrow applicability, and should not be confused or conflated with preclusion doctrines. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).
The Third Circuit recently considered whether a due process claim based on custodial termination proceedings was barred by the Rooker-Feldman doctrine. In B.S. v. Somerset County, the plaintiff “challenged the process she received with respect to state court orders.” 704 F.3d 250, 259 (3d Cir.2013). The state court orders terminated the mother’s custodial rights, transferring them to the father, and denied the mother’s habeas petition in which she argued the county violated state law by removing her daughter from her custody without a hearing. The Third Circuit held that because “the injury Mother claims is ... traceable to the [ajppellee’s actions, as opposed to the state court or *294 ders those actions allegedly caused, ... the Rooker-Feldman doctrine [does not] preclude[ ] federal subject matter jurisdiction.” Id. at 260.
Here, the due process claim asserts, as amicus counsel frames it, “an unjustified seizure of [Solomon] and his siblings by Mecklenburg County,” “an improper exercise of jurisdiction over [Solomon] and his family,” and a lack of “fundamental due process in the County’s termination procedures.” (Amicus Counsel’s Br. 10, 28.) These allegations are independent of, and do not seek to overturn, any prior state-court judgment.[1] Stratton’s relief does not depend on whether the prior state court judgments are overturned or vacated. Even if the order terminating parental rights was valid, the actions taken by the County to seize and retain custody over the children may have been improper. Because Stratton alleges an independent constitutional tort claim which is not dependent on the validity of the orders terminating parental rights, the Rooker-Feld-man doctrine does not bar the due process claim asserted here.
C.
Because I believe the due process claim survives both the insubstantiality bar and the Rooker-Feldman bar, I next consider whether the due process claim fails to state a claim. Stripping away the incredulous conspiracy theory, succinctly stated, Stratton asserts that the removal of the children and termination of parental rights deprived them of their right to live together as a family without due process of law, in violation of the Fourteenth Amendment.
The Due Process Clause of the Fourteenth Amendment prohibits States from depriving “any person of life, liberty, or property, without due process of law.” U.S. Const, amend. XIV. Due Process consists of both substantive and procedural due process components, both of which are asserted here. Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 822, 328 (4th Cir.2005). To state a due process claim, either substantive or procedural, a plaintiff must allege: (1) that they have been deprived of “interests encompassed by the Fourteenth Amendment’s protection of liberty and property,” Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and (2) the deprivation did not comport with process that is constitutionally due, Morrissey v. Brewer, 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). For a substantive due process claim, a plaintiff must also show that the state’s action is so arbitrary and egregious that it “shocks the conscience.” [2] Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).
The Supreme Court has recognized a “fundamental liberty interest of natural parents in the care, custody, and management of their child.” Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). As such, there is no doubt that now-deceased Jack Stratton had a liberty interest in retaining custody over, caring for, and rearing his children as he deemed appropriate. See Jordan by *295 Jordan v. Jackson, 15 F.3d 838, 342 (4th Cir.1994) (“The state’s removal of a child from his parents indisputably constitutes an interference with a liberty interest of the parents and thus triggers the procedural protections of the Fourteenth Amendment.”). However, because Jack is no longer a party to this action, the issue is whether Solomon, Jack’s son and the remaining Appellant, has a reciprocal liberty interest in being supervised and eared for by his parents.
Whether children “have cognizable, reciprocal interests in the companionship and supervision of their parents, and in maintaining the emotional bonds that develop within the unitary family” is an open question in this Circuit and has not been decided by the Supreme Court.[3] Jordan, 15 F.3d at 343 n. 10 (citing Michael H. v. Gerald D., 491 U.S. 110, 130, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (plurality) (“We have never had occasion to decide whether a child has a liberty interest, symmetrical with that of her parent, in maintaining her filial relationship.”); Smith v. Org. of Foster Families, 431 U.S. 816, 847, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977)).[4] For purposes of analysis, I assume that children have reciprocal liberty interests in retaining nurturing relationships with their parents. See Michael H., 491 U.S. at 130, 109 S.Ct. 2333 (assuming for the purpose of analysis that a child has a liberty interest in maintaining her filial relationship). Based on this assumption, Solomon has liberty interest in the supervision of his parents and may assert a due process claim, even in Jack’s absence. A review of the complaint indicates that Solomon has sufficiently pled the existence and deprivation of a liberty interest, satisfying the first prong to state a due process claim.
As to the second prong, Solomon must allege that the deprivation did not comport with constitutionally due process. Here, his claim fails.
It is true that regardless of the state’s practices and procedures, “[w]hat process is due” is a question of constitutional law, not state law. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). When a state seeks to deprive a child of the liberty interest in being nurtured by their parent, it must provide procedures that are fundamentally fair. See Santosky, 455 U.S. at 753-54, 102 S.Ct. 1388 (holding that “[w]hen the State moves to destroy ... familial bonds, it must provide parents with fundamentally fair procedures.”).
Yet, the complaint fails to satisfy the second element because it is clear that the state court provided Stratton with notice and adequate hearings prior to the termination of the familial relations. The complaint alleges numerous procedural defects, none of which persuade otherwise, *296 and only one is worth addressing. Specific to the initial seizure of the children, the complaint alleges that the Strattons: (1) never received certain state-mandated summons or at the very least, the required 7-day initial hearing, see N.C. Gen.Stat. Ann. § 7B-506(a); and (2) were never given the opportunity to present evidence to determine whether to continue custody, see id. § 7B-506(b). These assertions bely the court records which are the proper subject of judicial notice. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir.2002) (holding that in considering whether a claim fails to state a claim, we need not “ ‘accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.’ ” (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001))).
On January 30, 2001, when the Stratton children were removed from their parents’ home, the Strattons received summons to appear on February 2, 2001, for the appointment of counsel and other matters relating to the removal of the children. On February 2, the said hearing occurred to determine whether to continue custody of the Stratton children. The Stratton parents attended. No evidence was adduced; however, the court adopted the facts in the petition submitted by MCDSS to obtain the nonsecure custody warrant, which were the same facts as observed by MCDSS on their first visit to the Strat-tons’ first residence on December 19, 2000. The matter was then set for an adjudicatory hearing on March 12, 2001.
Prior to the March 12 hearing, on February 16, the Stratton parents and MCDSS entered into a plan that should have led to reunification of the parents and the children. In the agreement, the parties adopted the same facts as observed by MCDSS on their first visit. The Stratton parents signed the agreement. On March 12, at the adjudicatory hearing, the only evidence presented consisted of the court reading the facts in the mediation agreement into the record. At that hearing, the Stratton parents affirmed those facts.
Their affirmation of the facts is where this case fails, as it cannot be said that they were denied an opportunity to present evidence where they did not take advantage of the opportunity given to them to do so. Moreover, it appears that at some later proceedings, though Jack and Kathy may not have testified themselves, they adduced testimony in the form of affidavits of other witnesses, which favored the Stratton parents’ positions. It is clear from this record that the Strattons were given notice and an opportunity to be heard. Therefore, the complaint fails to state a procedural due process violation.
As to the substantive due process claim, the complaint asserts numerous bizarre allegations but fails to state any plausible facts that meet the “shock the conscience” standard. As such, the complaint fails to state a substantive due process violation.
III.
For the foregoing reasons, I would affirm the district court’s dismissal of the complaint.

. As the majority notes, amicus counsel properly concedes that to the extent that the prayer for relief asks the court "to vacate and enjoin” various state-court judgments, (see J.A. 158), the request is barred by the Rooker-Feldman doctrine.

. The Ninth Circuit has held that the proper test for the deprivation of familial companionship in violation of substantive due process is whether the state action amounts to "unwarranted interference” as opposed to whether it "shocks the conscience.” Crowe v. Cnty. of San Diego, 608 F.3d 406, 441 & n. 23 (9th Cir.2010) (citations omitted).

. In Santosky, the Supreme Court recognized that "the child and his parents share a vital interest in preventing termination of their natural relationship,” 455 U.S. at the Court has never held that this interest Fourteenth Amendment liberty interest.

. The Second and Ninth Circuits have held that children possess such liberty interests. See Smith v. City of Fontana, 818 F.2d 1411, 1418 (9th Cir.1987) overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir.1999) (en banc) ("The companionship and nurturing interests of parent and child in maintaining a tight familial bond are reciprocal, and we see no reason to accord less constitutional value to the child-parent relationship than we accord to the parent-child relationship.”); Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir.1977) ("[W]e are concerned with the most essential and basic aspect of familial privacy[ — ]the right of the family to remain together without the coercive interference of the awesome power of the state. This right to the preservation of family integrity encompasses the reciprocal rights of both parent and children.”).